UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF COMMUNITY BANK OF NEVADA, LAS VEGAS, NEVADA, | Case No. 2:12-cv-00067-MMD-CWH |
| Plaintiff, | ORDER |
| v. | (Plf.'s Motion for Summary Judgment – dkt. no. 12) |
| MOORE PHARMACEUTICALS, INC. and MICHAEL MOORE, | |
| Defendants. | |

## I.    SUMMARY

Before the Court is the Motion for Summary Judgment of Plaintiff Federal Deposit Insurance Corporation, in its capacity as Receiver for Community Bank of Nevada ("FDIC-R"). (Dkt. no. 12.)  For the reasons discussed below, the Motion is granted.

## II.    BACKGROUND

FDIC-R instituted this action as part of its ongoing statutorily-imposed duty as an appointed receiver to wind up the affairs of Community Bank of Nevada.  On August 19, 2009, the Nevada Financial Institutions Division closed Community Bank and appointed FDIC-R as its receiver pursuant to 12 U.S.C. § 1821. (*See* dkt. no. 14-H.)[1]  FDIC-R sued Defendants Moore Pharmaceuticals, Inc. and Michael Moore to recover on a

---

[1]While providing in a reply new evidence supporting a motion for summary judgment is prohibited, the Court takes judicial notice of the Order of Appointment and the Acceptance of Appointment as Receiver as a public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

1 $250,000 loan from Community Bank to Moore Pharmaceuticals made on April 24, 2007.

2 (*See* dkt. no. 1-A.)  The loan was secured by a guarantee from Michael Moore and a

3 security interest in Moore Pharmaceuticals' collateral.  (*See* dkt. nos. 1-D and 1-E.)

4 Before the loan balance was due, Moore Pharmaceuticals and Community bank agreed

5 to extend its maturity date twice.  (*See* dkt. nos. 1-F and 1-G.)

6 Upon FDIC-R's appointment as receiver, FDIC-R entered into an agreement with

7 Moore Pharmaceuticals to decrease the note amount to $248,033.20, and to extend the

8 maturity date for another year, to September 25, 2010.  (*See* dkt. no. 1-H.)

9 Defendants then defaulted on the loan.  (*See* dkt. nos. 12-B at 2:2 and 12-C at

10 2:2.)  FDIC-R, through loan service Newtek Services, Inc., obtained an appraisal of

11 Moore Pharmaceuticals' collateral, which concluded that the collateral had an orderly

12 liquidation value of $5,509 and a forced liquidation value of $2,070.  (*See* dkt. no. 12-D.)

13 Newtek sold one portion of the collateral, the storeroom inventory, for the appraised

14 value of $500, but failed to find a buyer for the remaining property.  (*See* dkt. no. 12-A at

15 ¶ 14.)  Noting that the cost of removing and transporting the property would exceed the

16 property's value, FDIC-R elected to abandon the property.  (*See id.*)

17 FDIC-R filed this suit to recover the loan amount, and now moves for summary

18 judgment seeking an outstanding balance of $289,355.18, inclusive of interest.  (*See*

19 dkt. no. 12.)

20 **III.    LEGAL STANDARD**

21 The purpose of summary judgment is to avoid unnecessary trials when there is no

22 dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

23 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings,

24 the discovery and disclosure materials on file, and any affidavits "show there is no

25 genuine issue as to any material fact and that the movant is entitled to judgment as a

26 matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine"

27 if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

28 the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

1    under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

2    Where reasonable minds could differ on the material facts at issue, however, summary

3    judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

4    1995).  "The amount of evidence necessary to raise a genuine issue of material fact is

5    enough 'to require a jury or judge to resolve the parties' differing versions of the truth at

6    trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l*

7    *Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).  In evaluating a summary

8    judgment motion, a court views all facts and draws all inferences in the light most

9    favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793

10   F.2d 1100, 1103 (9th Cir. 1986).

11        The moving party bears the burden of showing that there are no genuine issues

12   of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In

13   order to carry its burden of production, the moving party must either produce evidence

14   negating an essential element of the nonmoving party's claim or defense or show that

15   the nonmoving party does not have enough evidence of an essential element to carry its

16   ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

17   F.3d 1099, 1102 (9th Cir. 2000).   Once the moving party satisfies Rule 56's

18   requirements, the burden shifts to the party resisting the motion to "set forth specific

19   facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The

20   nonmoving party "may not rely on denials in the pleadings but must produce specific

21   evidence, through affidavits or admissible discovery material, to show that the dispute

22   exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

23   more than simply show that there is some metaphysical doubt as to the material facts."

24   *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The

25   mere existence of a scintilla of evidence in support of the plaintiff's position will be

26   insufficient."  *Anderson*, 477 U.S. at 252.

27   ///

28   ///

1    **IV.    DISCUSSION**

2          FDIC-R's Motion documents the history of Defendants' loan, and the details

3    surrounding the sale of the loan's collateral.  In opposing the Motion, Defendants provide

4    two brief arguments, both of which lack merit.

5          **A.    Standing and Authenticity of Documents**

6          First, Defendants challenge the evidentiary support behind the Motion by arguing

7    that FDIC-R has not demonstrated its standing and right to collect the debt, and that the

8    attached declaration of Newtek's vice president cannot authenticate the loan documents.

9    As mentioned above, FDIC-R's standing in this suit as a receiver charged with winding

10   up Community Bank's assets was made official in a public record that, as a matter

11   suitable for judicial notice, cannot be seriously challenged. *See, e.g., Esparza v.*

12   *Indymac Bank, F.S.B.*, 4:09-CV-03891-SBA, 2010 WL 2925391, at *3 n.1 (N.D. Cal. July

13   26, 2010) (taking judicial notice of the FDIC's status as receiver). Defendants'

14   authentication argument also fails, since Defendants themselves admitted to the

15   documents' legitimacy in their Answer to FDIC-R's Complaint.  (*See* dkt. no. 6 at ¶ 4

16   (admitting allegations concerning relevant loan documents)); *see* Fed. R. Civ. P.

17   36(a)(1)(B) (allowing requests for admission for the purpose of authenticating

18   documents); *Republic Sec. Corp. v. Puerto Rico Aqueduct & Sewer Auth.*, 674 F.2d 952,

19   957 (1st Cir. 1982) (noting that an admission of authenticity pursuant to Rule 36

20   precludes a party from later challenging its authenticity).  Indeed, the authentication of

21   the documents by Newtek's vice president suffices to support FDIC-R's Motion.  *See*

22   *F.D.I.C. v. CBC Fin. Corp.*, 2:11-CV-00297-LDG, 2012 WL 4181419 (D. Nev. Sept. 17,

23   2012) (rejecting argument that declaration of loan servicer's vice president fails to

24   authenticate loan documents); *Hidalgo v. Nat'l Default Servicing Corp.*, 2:13-cv-196,

25   2013 WL 663123, at *3 (D. Nev. Feb. 21, 2013) (discussing personal knowledge

26   requirement in analogous context).

27   ///

28   ///

1    **B.    Commercially Reasonable Sale**

2         Defendants also challenge the disposal of the collateral as being commercially

3    unreasonable in violation of NRS § 104.9610.  The statute provides:

4         1. After default, a secured party may sell, lease, license or otherwise
     dispose of any or all of the collateral in its present condition or following
5         any commercially reasonable preparation or processing.
          2. Every aspect of a disposition of collateral, including the method, manner,
6         time, place and other terms, must be commercially reasonable. If
     commercially reasonable, a secured party may dispose of collateral by
7         public or private proceedings, by one or more contracts, as a unit or in
     parcels, and at any time and place and on any terms.

8

9    NRS § 104.9610.  "The conditions of a commercially reasonable sale should reflect a

10   calculated effort to promote a sales price that is equitable to both the debtor and the

11   secured creditor."  *Dennison v. Allen Group Leasing Corp.*, 871 P.2d 288, 291 (Nev.

12   1994).  "The law is clear that the fact that a better price could have been obtained by a

13   sale at a different time or in a different method from that selected by a secured party is

14   not of itself sufficient to establish that the sale was not made in a commercially

15   reasonable manner."  *Savage Const., Inc. v. Challenge-Cook Bros., Inc.*, 714 P.2d 573,

16   574 (Nev. 1986) (internal quotation omitted).

17        Defendants provide the Court with the last page of an inventory list which

18   calculates the total cost of the property at $54,002.80 based upon the "average weighted

19   values" of each item, which they argue demonstrates the unreasonableness of the sale.

20   Defendants also argue that the lack of apparent marketing or advertising of the property,

21   and the lack of an auction sale, renders FDIC-R's efforts commercially unreasonable.

22   These arguments fail.

23        The Court gives little weight to a self-serving inventory list created by Moore.  By

24   Moore's admission, the inventory lists the "[a]verage of what each item cost at the time it

25   was acquired by Moore Pharmaceuticals," and excludes furniture or equipment.  (*See*

26   Moore Decl., dkt. no. 13-1 at ¶ 5.)  As Moore noted during his deposition, these figures

27   did not represent the actual market value of the assets at the time of the sale.  (*See* dkt.

28   no. 14-N at 72-73.)  FDIC-R provided the only credible evidence of the collateral's value

1    in the form of an independent appraisal valuing the property at between approximately

2    $2,000 to $5,500, depending on the conditions of any future sale.  (*See* dkt. no. 12-D.)

3    The property that was sold by FDIC-R was sold for the price listed by the appraisal, and

4    the property not sold was determined to not be worth the expense of transportation and

5    auction.  While it may be true that the remaining assets might have fetched a larger sale

6    sum were they advertised and auctioned, Defendants' position ignores the costs

7    associated with such a sale.  Having failed to present any evidence that the expense of

8    transportation, marketing, and auctioning the equipment are low enough to justify the

9    few thousand dollars that might have been recovered in a sale, Defendants cannot now

10   challenge as unreasonable FDIC-R's efforts.

11   **V.    CONCLUSION**

12        Defendants concede that Moore Pharmaceuticals is in default of its loan

13   obligation, and fail to raise any disputed question of fact that would prevent FDIC-R's

14   attempt to recover Community Bank's apparent loss.  Accordingly, Plaintiff FDIC-R's

15   Motion for Summary Judgment (dkt. no. 12) is GRANTED.

16

        DATED THIS 22nd day of March 2013.

17

18

19                                                    MIRANDA M. DU
                                                      UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28